IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK S. WALLACH, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF PERFORMANCE TRANSPORTATION SERVICES, INC., and TAURO BROTHERS TRUCKING COMPANY, jointly and on behalf of the estate and all others similarly situated, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Civ. No. 10-260-SLR |
| v. ) ) | |
| EATON CORPORATION, DAIMLER TRUCKS NORTH AMERICA LLC, NAVISTAR INTERNATIONAL CORPORATION, INTERNATIONAL TRUCK AND ENGINE CORPORATION, PACCAR INC., KENWORTH TRUCK COMPANY, PETERBILT MOTORS COMPANY, VOLVO TRUCKS NORTH AMERICA and MACK TRUCKS, INC., ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this ___ day of September 2012, having reviewed defendants' motions for certification of interlocutory appeal and the papers filed in connection therewith;

IT IS ORDERED that said motions (D.I. 66 & 71) are denied, for the reasons that follow:

1. **Background**. On September 30, 2011, in response to defendant Eaton and defendant OEMs' motions to dismiss, the court issued an opinion and order granting in

part and denying in part said motion. (D.I. 62 and 63) On October 11, 2011 and October 21, 2011 respectively, the OEMs and Eaton filed motions to amend the court's September 30, 2011 order to include a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (D.I. 66 and 71) Briefs in support of the parties' respective positions were filed thereafter.

 2. **Standard**. 28 U.S.C.A. § 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Accordingly, "[t]he order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) . . . 'materially advance the ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). However, "these three criteria do not limit the Court's discretion to grant or deny an interlocutory appeal. Leave to file [such] appeal may be denied for reasons apart from this specified criteria, including such matters as the appellate docket or the desire to have a full record before considering the disputed legal issue." *In re SemCrude, L.P.*, 407 B.R. 553, 557 (D. Del. 2009). Ultimately, "entertaining an interlocutory appeal under § 1292(b) is appropriate only when the party seeking leave to appeal 'establishes [that] exceptional circumstances justify a departure from the basic

policy of postponing review until after the entry of final judgment.' In part, this stems from the fact that '[p]iecemeal litigation is generally disfavored.'" *Chase Bank USA, N.A. v. Hess*, 2011 WL 4459604, at *1 (D. Del. Sept. 26, 2011) (citations omitted).

3. **Discussion**. Defendants argue that the existence and applicability of a general coconspirator, i.e., a complete involvement, exception to the *Illinois Brick* direct purchaser rule are controlling questions of law for which there is a substantial ground for difference of opinion. The thrust of defendants' argument is that the court, in its opinion, acknowledged some uncertainty about the exception's existence and, assuming it does not exist, plaintiffs would not have standing to sue. (D.I. 67 at 1-5; D.I. 72 at 6-7) While the court did acknowledge some uncertainty, ultimately the court concluded that *Hess I*[1] and *Hess II*,[2] read together, affirm the existence of the exception. *See Hess II*, 602 F.3d at 244 ("[W]e adopted a 'limited' coconspirator exception [in *Hess I*]."). The court also notes, as the *Hess I* court did, that the Seventh Circuit has adopted the exception. *Hess I*, 424 F.3d at 379 (citing *Paper Sys. Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629 (7th Cir. 2002)). Defendants' focus on *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990), is unpersuasive. Although the Supreme Court in *UltiCorp* observed that the "possibility of allowing an exception [to the *Illinois Brick* direct-purchaser rule], even in rather meritorious circumstances, would undermine the rule," *UtiliCorp*, 497 U.S. at 216, the court emphasizes that the Third and Seventh Circuits had the benefit of the *UltiCorp* decision

---

[1] *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3rd Cir. 2005) ("*Hess I*")

[2] *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 259 (3rd Cir. 2010) ("*Hess II*")

3

when they reached their arguably contrary conclusions. As the Third Circuit explained in *Hess I*, circuit courts have uniformly accepted the possibility of a complete involvement defense. *Hess I*, 424 F.3d at 382. While the cited cases were not *Illinois Brick*-specific cases, the fact that courts have found that certain conspiring plaintiffs could be barred from suit is suggestive of the fact that these circuits would adopt, as the Third Circuit has, a coconspirator exception. In light of these facts, the court declines to characterize the Third Circuit law as a substantial ground for difference of opinion, thus justifying piecemeal appellate review.

4. With respect to the applicability of the exception, defendants argue that the court's finding of complete, voluntary and substantially equal participation was in error in light of plaintiffs' admission that Eaton had to "police[]" its agreement with the OEMs by threatening litigation. (D.I. 67 at 6 (citing D.I. 1 at ¶ 87)) As defendants' explain, there would be "no need to police the OEMs if the OEMs' participation was voluntary and substantially equal." (*Id.*) While the court doubts that its application of the exception on a motion to dismiss would properly be considered a controlling question of law, *see, e.g., In re Semcrude, L.P.*, 2010 WL 4537921, at *3 (D. Del. Oct. 26, 2010) (largely fact-sensitive inquires are not controlling issues of law), the court nevertheless notes that the admission was made in the original, now mooted, complaint.

5. Defendants' final argument is that the *Illinois Brick* coconspirator exception cannot be applicable unless the OEMs engaged in a price fixing conspiracy as well. In support of this position, defendants cite to the Third Circuit cases of *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 854-55 (3d Cir. 1996) (a case not cited in any previous brief)

4

and *Hess I*. The court does not read *McCarthy* or *Hess I* to definitively mandate the existence of a price fixing conspiracy. *McCarthy* appears most directly concerned with the failure to join upstream defendants and, in the case at bar, the upstream defendants, the OEMs, have been joined. Further, to the extent that *McCarthy* holds that a plaintiff needs to allege that the "intermediaries immediately upstream . . . colluded . . . to overcharge," *McCarthy*, 80 F.3d at 855, plaintiffs have set forth such allegations. *Hess I*, in a footnote, discussed how an exclusive dealing conspiracy in combination with an RPM conspiracy could be profitable to dealers; as the Court explained:

> [I]t would presumably not have been profitable for the dealers to have joined a conspiracy in which they were overcharged (the exclusive-dealing conspiracy). However, the dealers might have joined such a conspiracy if they were compensated in some fashion. Plaintiffs argue that Dentsply conspired to fix the prices that its dealers charge. This is effectively a **horizontal** price-fixing conspiracy at the dealer level (which could presumably be profitable to the dealers).

*Hess I*, 424 F.3d at 379, n.12 (emphasis in original). In the case at bar, a price fixing conspiracy has not been alleged; however, plaintiffs' complaint does assert that the OEMs were compensated (via a share in monopoly rents).[3]

6. **Conclusion.** For the reasons discussed above, the court declines to amend its order to include a certification for interlocutory appeal.

*(signature)*
United States District Judge

---

[3] In this regard, plaintiffs' theory of the case could run afoul of the *Illinois Brick* duplication and apportionment policy positions (*see* D.I. 62 at 6); discovery will illuminate these concerns with more clarity.