IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK S. WALLACH, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF PERFORMANCE TRANSPORTATION SERVICES, INC. and TAURO BROTHERS TRUCKING COMPANY, jointly and on behalf of the Estate and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION, DAIMLER TRUCKS NORTH AMERICA LLC, NAVISTAR INTERNATIONAL CORPORATION, INTERNATIONAL TRUCK AND ENGINE CORPORATION, PACCAR INC., KENWORTH TRUCK COMPANY, PETERBILT MOTORS COMPANY, VOLVO TRUCKS NORTH AMERICA and MACK TRUCKS, INC.,<br><br>Defendants. | Civ. No. 10-260-SLR |

Jeffrey S. Goddess, Esq., Jessica Zeldin, Esq. and P. Bradford deLeeuw, Esq. of Rosenthal, Monhait & Goddess, P.A. Wilmington, Delaware. Counsel for Plaintiffs Mark S. Wallach, as Chapter 7 Trustee for the Bankruptcy Estate of Performance Transportation Services, Inc. and Tauro Brothers Trucking Company. Of Counsel: Manuel J. Dominquez, Esq., Marc J. Greenspon, Esq., Kyle G. DeValerio, Esq. of Berman DeValerio; Richard A. Koffman, Esq., Benjamin D. Brown, Esq. and Emmy L. Levens, Esq. of Cohen, Milstein, Sellers & Toll PLLC.; Barry S. Taus, Esq. and Brett Cebulash, Esq. of Taus, Cebulash & Landau LLP; Peter Kohn, Esq. of Faruqi & Faruqi LLP; Vincent J. Esades, Esq. of Heins, Mills & Olson PLC; Robert G. Eisler, Esq. of Grant & Eisenhofer, PA; and Scott W. Carlson, Esq. of Heins, Mills & Olson, PLC.

Donald E. Reid, Esq., of Morris Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for Defendant Eaton Corporation. Of Counsel: Joseph A. Ostoyich, Esq. and William C. Lavery, Esq. of Baker Botts, LLP.

Richard L. Horwitz, Esq. and John A. Sensing, Esq. of Potter, Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Defendants Daimler Trucks North America

LLC and Freightliner LLC. Of Counsel: John Robert Robertson, Esq., Corey W. Roush, Esq., Justin Bernick, Esq., Meghan C. Edwards-Ford, Esq., and Benjamin F. Holt, Esq. of Hogan Lovells LLP.

Kelly E. Farnan, Esq. of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Defendants Navistar International Corporation and International Truck and Engine Corporation. Of Counsel: Daniel E. Laytin, Esq. and James H. Mutchnik, Esq. of Kirkland & Ellis, LLP.

Jeffrey B. Bove, Esq. of Novak Druce Connolly Bove Quigg LLP. Counsel for Defendants Paccar, Inc., Kenworth Truck and Peterbilt Motors Company. Of Counsel: Thomas L. Boeder, Esq., Cori G. Moore, Esq., Catherine S. Simonsen, Esq. and Eric J. Weiss, Esq. of Perkins Coie, LLP.

M. Duncan Grant, Esq. of Pepper Hamilton LLP, Wilmington, Delaware. Counsel for Defendants Volvo Trucks North America and Mack Trucks Inc.

**MEMORANDUM OPINION**

Dated: August 31, 2015
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Presently before the court is plaintiffs' Mark S. Wallach (as Chapter 7 Trustee for the Bankruptcy Estate of Performance Transportation Services, Inc. ("PTS")) and Tauro Brothers Trucking Company ("Tauro Brothers") (collectively, "plaintiffs" or the "proposed DPP class") motion for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). (D.I. 228) On January 8, 2015, defendants sought leave to file a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1). (D.I. 289) The court denied defendants' request and instructed defendants to address the standing issue in connection with the class certification briefing. (D.I. 296) In addition to the motion for class certification are two motions to intervene as plaintiff/class representative pursuant to Fed. R. Civ. P. 24 by Toledo Mack Sales & Service, Inc. ("Toledo Mack") (D.I. 314) and JJRS, LLC ("JJRS") (D.I. 326). Defendants to this action include Eaton Corporation ("Eaton"), Daimler Trucks North America LLC ("Daimler Trucks"), Freightliner LLC "Frightliner"), Navistar International Corporation ("Navistar"), International Truck and Engine Corporation ("International"), Paccar, Inc. ("Paccar"), Kenworth Truck Company ("Kenworth"), Peterbilt Motors Company ("Peterbilt"), Volvo Trucks North America ("Volvo"), and Mack Trucks, Inc. ("Mack") (collectively, "defendants").

Plaintiffs assert that defendants engaged in anticompetitive conduct. (D.I. 25 at ¶¶ 1-2) Specifically, they allege that Eaton entered into exclusive dealing agreements with the Original Equipment Manufacturers ("OEMs") (Daimler Trucks, Freightliner, Navistar, International, Paccar, Kenworth, Peterbilt, Volvo and Mack) of Class 8 trucks to maintain or enhance their monopoly power in the market for transmissions used the Class 8 trucks. (*Id.*) Plaintiffs allege that such anticompetitive conduct resulted in the

elimination of Eaton's biggest competitor ZF Meritor. (*Id.*) The court has jurisdiction pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.

## II. BACKGROUND

### A. The Parties

Plaintiffs are trucking companies. Prior to seeking bankruptcy protection in November of 2007, PTS was in the business of transporting newly assembled vehicles from manufacturing facilities to retail dealerships. (D.I. 25 at ¶ 17) PTS delivered new vehicles using a fleet of Class 8 trucks. (*Id.*) PTS alleges that it purchased Class 8 vehicles from one or more of the defendants. (*Id.*) Tauro Brothers is also a trucking company and is the alleged assignee of certain claims from R&R, Inc. ("R&R"), which purchased Class 8 trucks from one or more defendants. (*Id.* at ¶ 18)

Eaton manufactures transmissions for Class 8 trucks. (D.I. 25 at ¶ 19) The OEM defendants manufacture and sell Class 8 trucks. (*Id.* at ¶¶ 20-27) In order to assemble and sell Class 8 trucks, OEMs purchase component parts, such as transmissions, from suppliers, such as Eaton. (*Id.* at ¶ 39)

### B. Class 8 Trucks and Transmissions

There are eight recognized classes of vehicles, with Class 8 trucks being the heaviest. (*Id.* at ¶ 32) Examples of Class 8 heavy duty trucks include fire trucks, garbage trucks, and long-distance freighters. (*Id.* at ¶¶ 36-38) The purchase of Class 8 trucks is unique in the sense that buyers can essentially build a truck to their desired specifications. (*Id.* at ¶ 4) When purchasing a Class 8 truck, buyers can consult OEM "databooks," which list an OEM's standard and non-standard component offerings,[1] and

---

[1] A databook is a term of art used in the trucking industry. It represents the truck broken down to its core components and provides customers with standard and nonstandard component options. (D.1. 25 at ¶¶ 4; 41) A transmission is an example of a component

2

designate the specific components they desire in their trucks. (*Id.* at ¶¶ 40-41) Since manufacturers of component parts in the Class 8 truck industry market products directly to potential customers, it is not uncommon for buyers to select non-standard options from a databook. (*Id.*)

### C. Plaintiffs' Allegations

Plaintiffs contend that Eaton has been the dominant and most widely recognized American manufacturer of Class 8 transmissions, holding a near monopoly in the market since the 1950s. (*Id.* at ¶¶ 45-48) In the 1990s, ZF Meritor established itself as a viable competitor to Eaton, producing desirable, competitive and innovative transmissions. (*Id.* at ¶¶ 55-68) In response to this competition from ZF Meritor and a significant downturn in the Class 8 truck market which occurred in late 1999-early 2000, plaintiffs allege that Eaton and the OEMs conspired to put ZF Meritor out of business, thereby expanding Eaton's monopoly and permitting all defendants to share in the profits resulting from this monopoly. (*Id.* at ¶ 69)

This conspiracy was allegedly achieved by Eaton entering into Long Term Agreements ("LTAs") in the early 2000s with each of the four OEMs.[2] (*Id.* at ¶ 75) While each Eaton-OEM LTA was separately negotiated and thus distinct, the LTAs shared a similar purpose and features. (*Id.* at ¶¶ 85-128) Each LTA contained a provision whereby the OEMs would receive sizable and lucrative rebates from Eaton assuming the OEMs utilized a certain percentage of Eaton transmissions annually. (*Id.*) For example, under the Freightliner-Eaton LTA, Freightliner was required to purchase

---

part that exists in a databook. (*Id.*)

[2] A series of mergers in the mid-1990's reduced to four the number of OEMs purchasing Class 8 transmissions. (D.I. 25 at ¶ 51)

3

92% of its Class 8 transmission needs from Eaton in order to receive the specified rebates. (*Id.* at ¶ 88) Aside from tying percentage requirements to rebates, the LTAs included other provisions designed to minimize ZF Meritor's market share. Examples of these provisions include eliminating ZF Meritor transmissions from databooks or removing them from the standard position, refusing to provide warranties on trucks with ZF Meritor transmissions, overcharging for ZF Meritor transmissions, and refusing to provide financing on vehicles with ZF Meritor transmissions. (*Id.* at ¶¶ 85-129) In essence, plaintiffs argue that the LTAs were defacto exclusive dealing contracts (*id.* at ¶ 10) and the OEMs all agreed with each other to enter into these agreements in order to eliminate ZF Meritor and share in the profits of Eaton's monopoly. (*Id.* at ¶ 2) In the end, plaintiffs allege that defendants' conspiracy was successful as the LTAs greatly diminished ZF Meritor's market share in the Class 8 transmission field and left it no opportunity for growth. (*Id.* at ¶¶ 132-135) In the face of these economic realities, ZF Meritor's market share declined to an insignificant level. (*Id.*) Plaintiffs ultimately contend that they had to pay higher prices for transmissions and, in turn, for Class 8 trucks, as a result of defendants' actions; they also assert that "they had less choice and suffered from a decrease in innovation." (*Id.* at ¶ 12)

## III. STANDARD

Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62,

4

69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 1997). Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. *See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891).

## IV. DISCUSSION

The proposed DPP class is as follows:

> All persons or entities in the United States that purchased vehicles that contain Eaton Class 8 Linehaul or Performance Transmissions directly from Navistar; International Corporation; International Truck and Engine Corporation; Paccar, Inc.; Kenworth Truck Company; Peterbilt Motors Company; Volvo Trucks North America; or Mack Trucks, Inc. (the "Class"),[3] beginning October 1, 2002 and

---

[3] Plaintiffs base their class certification on Dr. Lamb's modified regression, which excludes Daimler purchases, and therefore eliminates PTS as a proposed class

5

> continuing until the present (the "Class Period"). Specifically
> excluded from this Class are Defendants and their parent
> companies, subsidiaries, affiliates, officers, directors, employees,
> legal representatives, heirs or assigns, and co-conspirators. Also
> excluded are any federal governmental entities, any judicial officers
> presiding over this action and the members of his/her immediate
> family and judicial staff, and any juror assigned to this action.

The plaintiffs assert the following four claims against defendants: 1) conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (against all defendants); (2) use of exclusionary contracts to substantially lessen competition in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14 (against all defendants); (3) use of exclusionary contracts and other conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (against all defendants); and (4) monopolization of the Class 8 transmissions market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (against Eaton only). (D.I. 25) The proposed DPP class moves for certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (D.I. 228)

## A. Standing

Section 4 of the Clayton Act provides a private cause of action for "any person injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977), the United States Supreme Court "established the general rule that only direct purchasers from antitrust violators may recover damages in antitrust suits." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005). Indirect purchasers are generally not entitled to recover damages for passed-on overcharges. *Id.* This is referred to as the "indirect purchaser rule." Three policy reasons justified the Court's decision to impose this rule: "(1) a risk of duplicative liability for defendants and

---

member. (*See* D.I. 316 at 3 n.5; D.I. 337, ex 1 at ¶ 6)

potentially inconsistent adjudications could arise if courts permitted both direct and indirect purchasers to sue defendants for the same overcharge; (2) the evidentiary complexities and uncertainties involved in ascertaining the portion of the overcharge that the direct purchasers had passed on to the various levels of indirect purchasers would place too great a burden on the courts; and (3) permitting direct and indirect purchasers to sue only for the amount of the overcharge they themselves absorbed and did not pass on would cause inefficient enforcement of the antitrust laws by diluting the ultimate recovery and thus decreasing the direct purchasers' incentive to sue." *Id.* at 369-70.

In connection with their briefing on class certification, defendants allege that the named class representatives are not direct purchasers and, therefore, lack standing to bring suit. Plaintiffs assert that, although Tauro Brothers did not directly purchase Class 8 trucks from an OEM, Tauro Brothers has standing pursuant to an assignment from direct purchaser R&R.[4] Defendants do not dispute that "an antitrust claim can be expressly assigned." *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993). Instead, defendants allege that the purported assignment is legally invalid for lack of consideration.[5] Defendants cite the testimony of R&R's manager and signatory to the contract (D.I. 299, ex. 65 at 55:22-56:2) and Tauro

---

[4] Because Wallach (as a chapter 7 trustee for PTS) is no longer a member of the class under the revised proposed DPP class, the court does not consider defendants' arguments with respect to PTS's lack of standing. (*See* D.I. 316 at 3 n.5; D.I. 337, ex 1 at ¶ 6)

[5] The court agrees with plaintiffs that federal common law, not Ohio law, governs the court's analysis regarding the validity of the assignment. *See Gulfstream III*, 995 F.2d at 437-38 (holding that "the validity of the assignment of an antitrust claim is a matter of federal common law").

7

Brother's 30(b)(6) corporate designee (D.I. 299, ex. 59 at 164:2-6) that R&R received nothing in return for assigning the claims to Tauro Brothers. Plaintiffs respond that Tauro Brothers gave R&R business goodwill in exchange for the assignment.[6] (*Id.* at 162:22-163:13)

"Consideration requires that a performance or return promise be 'bargained for' in exchange for a promise." Restatement (Second) of Contracts, § 71 (1979); *see also* 3 Williston on Contracts, § 7.6 (4th ed. 1992). However, "where the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration." 3 Williston on Contracts, § 7.7 (4th ed. 1992). Here, plaintiffs advanced no evidence to support the conclusion that the receipt of "business goodwill" involved more than an illusory promise of future business transactions. The record instead demonstrates there was no discussion between R&R and Tauro Brothers of future transactions during the signing of the assignment. (D.I. 299, ex. 67 at 118:17-119:1) As such, the court concludes that the assignment of the right to bring suit was not supported by consideration and, therefore, is invalid. Consequently, Tauro Brothers does not have standing to bring suit.

### B. Leave to Intervene

Plaintiffs request that, should the court find that Tauro Brothers lacks standing to serve as a class representative, the court grant the pending motions to intervene as

---

[6] Plaintiffs contend, in the alternative, that no consideration is required for a valid assignment under federal common law. Plaintiffs' citation in this regard to *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090 (3d Cir. 1980), is unavailing, as the assignment in Fine Paper was in connection with sales of paper and, therefore, did not lack consideration. Indeed, one of the cases cited by Fine Paper discussed the possibility that the "'validity' of the assignment, i.e. . . . the giving of consideration" might have been challenged by the defendants. *Mercu-Ray Indus., Inc. v. Bristol-Myers Co.*, 392 F. Supp. 16, 18 (S.D.N.Y.) aff'd sub nom. *Mercu-Ray Indus., Inc. v. Bristol-Meyers Co.*, 508 F.2d 837 (2d Cir. 1974).

8

class representatives pursuant to Fed. R. Civ. P. 24(a) or 24(b) from Toledo Mack and JJRS. Toledo Mack is an Ohio corporation with its principal place of business in Toledo, Ohio. (D.I. 314, ex. A at ¶ 17) Toledo Mack is involved in the sale and service of Mack trucks in the United States and allegedly sustained injury and was damaged by reason of the antitrust violations alleged in the complaint in intervention. (*Id.*) JJRS (together with Toledo Mack, "the intervening plaintiffs") is a Nevada limited liability company that allegedly purchased Class 8 trucks directly from one of the defendants during the proposed class period. (D.I. 326, ex. A at ¶ 17)

Fed. R. Civ. P. 24(a) provides:

> On timely motion, the court must permit anyone to intervene who . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Third Circuit has explained that "[i]t is axiomatic that to intervene as a matter right under Rule 24(a)(2) the prospective intervenor must establish that: '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) (quoting *Harris v. Pernsley*, 820 F.2d 592, 593 (3d Cir. 1987)). Moreover, "[i]n the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation," so the "gravamen of the court's analysis must be on the timeliness of the motion to intervene and on the

adequacy of representation." *Id.* A prospective intervenor bears the burden of meeting each of these requirements. *United States v. Alcan Aluminun Co.*, 25 F.3d 1174, 1180-1181 n.9 (3d Cir. 1994).

Permissive intervention is governed by Fed. R. Civ. P. 24(b), which states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Additionally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

Defendants do not dispute that the interests of the intervening plaintiffs may be affected or impaired by the disposition of the action, that the intervening plaintiffs have a sufficient interest in the litigation, or that the interests of the intervening plaintiffs are not adequately represented by an existing party in the litigation.[7] Rather, defendants challenge the timeliness of the motions for leave to intervene.[8]

When evaluating the timeliness of the intervention, the court should consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Cmty*, 418 F.3d at 314. The timeliness of the

---

[7] Defendants do question whether the intervening plaintiffs' lawyers are capable of adequately representing both the intervening plaintiffs and Tauro Brothers given that said lawyers must argue that the existing parties to the action do not adequately represent the prospective intervenor's interests. (D.I. 325 at 5-6) The intervening plaintiffs respond that there is no conflict of interest insofar as the objective of intervention is to protect the interests of the class. (D.I. 336 at 4)

[8] Defendants also separately challenge JJRS's standing to bring suit as a direct purchaser. Because the court does not find that intervention is proper, the court does not address defendants' challenge to JJRS's standing.

10

intervention "is determined by the totality of the circumstances."⁹ *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994). Timeliness is a "threshold" issue for both permissive intervention under Fed. R. Civ. P. 24(b) and intervention of right under Fed. R. Civ. P. 24(a). *See In re Safeguard Scientifics Antitrust Litig.*, 220 F.R.D. 43, 46 (E.D. Pa. 2004).

Regarding the stage of the proceeding, the court notes that over the course of this five-year-old litigation, the parties briefed a motion to dismiss, completed extensive fact discovery, and briefed a motion to certify the class. In addition, the parties' class certification economists drafted expert reports and were deposed.¹⁰

As for the timing of the motion to intervene, the intervening plaintiffs urge that there has been no improper delay, as they filed their motions to intervene in March 2015, approximately two months after defendants first raised the issue of lack of standing in a letter to the court on January 8, 2015. (D.I. 289) The court is not persuaded that January 8, 2015 is the appropriate yardstick by which to measure the

---

⁹ The Third Circuit also held that "[t]he time frame in which a class member may file a motion to intervene challenging the adequacy of class representation must be at least as long as the time in which s/he may opt-out of the class." *In re Cmty*, 418 F.3d at 314. However, the *In re Cmty* court considered a situation where a class-wide settlement had been reached, the class had been conditionally certified, and a class notice containing an opt-out date had been mailed to all putative class members. *Id.* at 286-87. As such, the guidepost of the opt-out deadline does not illuminate the instant case, where no class has yet been certified and no class notice has been mailed.

¹⁰ The court also notes that the instant case is dissimilar to cases cited by plaintiffs in which the court permitted intervention of new class representatives **after** granting class certification. *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975); *Shields v. Washington Bancorporation*, 1992 WL 880004, at *2-3 (D.D.C. Apr. 7, 1992); *Hartman v. Duffy*, 158 F.R.D. 525, 547 (D.D.C. 1994). As explained by the Supreme Court in *Sosna*, "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant," thereby impacting the intervention analysis. 419 U.S. at 399.

11

timeliness of the motions to intervene. Given the caliber of representation and the significant amount of discovery taken to date,[11] the court finds that the intervening plaintiffs should have become aware of potential challenges to the standing of the named class representatives in August and November of 2014 when defendants questioned the sufficiency of consideration through an interrogatory and various depositions.[12] *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (finding that the court should consider when the intervenors "knew or should have known . . . that their interest was not protected"). Given that the intervening plaintiffs had reason to doubt the standing of the named representatives as early as August of 2014, the court is not persuaded that the intervening plaintiffs have offered a persuasive reason for the delay in addressing said deficiency.

Regarding prejudice that would result from the delay, the intervening plaintiffs argue that prejudice is minimal as they are represented by the current co-lead law firms and do not seek to add new claims to the action. To wit, the allegations in the complaint in intervention are substantially identical to the allegations in the amended complaint. (D.I. 25; D.I. 314, ex. A; D.I. 326, ex. A) Intervening plaintiffs add that the "vast majority" of work on the case relating to issues common to the class will be preserved as the intervening plaintiffs are members of the proposed class. (D.I. 336 at 5; D.I. 345 at 9) However, even the intervening plaintiffs recognize that allowing intervention at this stage in the litigation would require re-opening discovery to explore the suitability of the

---

[11] Defendants allege that they produced over 242,000 documents (totaling over 2.5 million pages) in addition to taking depositions of the named plaintiffs. (D.I. 325 at 7)

[12] As counsel for the intervening plaintiffs is involved in the present litigation, the court "impute[s] the knowledge of counsel – [proposed intervenor's] agent – to him." *Harris v. Vector Mktg. Corp*, 2010 WL 3743532, at *3 (N.D. Cal. Sept. 17, 2010).

intervening plaintiffs as a class representatives and re-briefing class certification issues specific to the intervening plaintiffs. Defendants would additionally be required to respond to the proposed complaint. After five years of litigation, these additional hurdles will result in further delays as well as burdensome costs to the defendants.

After considering the "totality of the circumstances," the court finds that plaintiffs have not carried their burden to demonstrate that the motions to intervene are timely and non-prejudicial under Fed. R. Civ. P. 24(a). As permissive intervention under Fed. R. Civ. P. 24(b) also requires a showing of timeliness and lack of prejudice, the court similarly declines to exercise is discretion to allow permissive intervention.

## V. CONCLUSION

Because the proposed class lacks representation, the case does not present a case or controversy under Article III. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998) (holding that "whether an action presents a 'case or controversy' under Article III is determined vis-à-vis the named parties"). Accordingly, the case is dismissed.

13